**Roy C. TASSINARE, et al.,
Plaintiffs–Appellants,**

v.

**AMERICAN NATIONAL INSURANCE
COMPANY, et al., Defendants–
Appellees.**

**Nos. 93–1380, 93–1851 and 93–1893.**

United States Court of Appeals,
Sixth Circuit.

Argued May 9, 1994.

Decided Aug. 4, 1994.

John R. Parnell, Walter L. Baumgardner, Jr. (briefed), Debra D. Arlen (argued), Musilli & Baumgardner, St. Clair Shores, MI, for Roy C. Tassinare, plaintiff-appellant.

Robert G. Russell, Edward C. Cutlip, Jr. (argued and briefed), Curtis J. DeRoo, Kerr, Russell & Weber, Detroit, MI, for American Nat. Ins. Co., defendant-appellee.

John R. Parnell, Walter L. Baumgardner, Jr. (briefed), Musilli & Baumgardner, St. Clair Shores, MI, for James W. Large, Mary E. Fort, Victor E. Brandrup, Hugh L. Jobe, Daniel L. Hart, William G. Babecki, Leonard P. DeConcini, Richard H. Beatty, Herbert O. Cook, George I. Yamate, Milford P. Sussman, Mary Louise Pangle, Eugene J. Goddard, Stanton L. McGuire, Glen P. Marcus, Fred S. Aguado, M. Goddard, Earl C. Clark, D. V. Nuzzo, Robert Melzer, John Doe, I, John Doe, II.

Before: BOGGS and DAUGHTREY, Circuit Judges; and ENGEL, Senior Circuit Judge.

ENGEL, Senior Circuit Judge.

Roy Tassinare and twenty-one other named plaintiffs appeal their action for breach of fiduciary duty against the directors of American National Insurance Co. As current or former American National employees, the plaintiffs allege that the directors' failure to secure certain pension benefits violated fiduciary duties imposed by the Employee Retirement Income Security Act

("ERISA").[1] The district court concluded that the fiduciary action was time-barred. The district court also concluded that the agents' common law claims were preempted by ERISA. For the following reasons, we AFFIRM.

## I. Background

The plaintiffs are field agents for American National, many of whom have toiled for that company since the mid–1950's. In their complaint, they allege that American National has reneged on its promise to contribute two dollars to their retirement plan for every dollar contributed by the agents. To prove the existence of this promise, the agents rely heavily upon two pieces of evidence. First, they offer a copy of the recruiting manual used by American National at the time of their hiring. This manual, with the phrase "Lifetime Career" emblazoned on the cover, boasts that "the Company averages contributing $2 for every $1 [the agent] contribute[s]" to "the Company's Pension Plan." The second piece of corroborative evidence offered by the agents is a letter written by American National's Regional Director of Agencies, Timothy Reiman, to field agent Roy Tassinare, on May 23, 1980. In this letter, Reiman provided a schedule of the "matching contribution[s]" American National would make to the agents' retirement plan.

To convert the alleged broken promise into a cause of action for breach of fiduciary duty, the agents argue that the defendants, who are the directors of the company they worked for, are also ERISA fiduciaries with respect to the agents' pension plan. The plan was managed by a "Benefits Administrative Committee," and according to the agents, the directors controlled all major plan decisions through appointment of the members of that committee. Emphasizing that the directors, as plan fiduciaries, were obliged to collect all required employer contributions to the plan, the agents claim that a fiduciary breach occurred when the directors reneged on the promise of matching contributions.

The directors offer several plausible defenses to the agents' claim, most of which have not yet been addressed in the district court. First, the directors adamantly deny ever promising to match the agents' pension contributions. In support of this position, American National refers the court to the text of two documents: (1) the "Retirement Plan for Ordinary Representatives of American National Insurance Company," and (2) the summary plan description required by 29 U.S.C. § 1022. Both of these legally significant documents elaborately detail the agents' benefits without any mention of matching contributions. American National argues that the recruiting manual the agents rely upon pre-dates the adoption of its ERISA retirement plan. The company dismisses the 1980 Reiman letter as an unauthorized and inaccurate summary of the agents' retirement benefits.

As a second line of defense, the directors dispute that they are in fact the proper defendants in this action. The directors argue that the Benefits Administrative Committee, rather than American National's Board of Directors, is the proper defendant in any fiduciary suit arising under the agents' pension plan.[2]

Assuming *arguendo* that the directors are in fact the proper defendants, a further question remains as to whether *the agents* are in fact *the proper plaintiffs* in this case. It is well-settled that fiduciary liability under ERISA arises in favor of the plan itself, and that plan participants may not seek to recover in an individual capacity. *See Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 140–44, 105 S.Ct. 3085, 3089–91, 87 L.Ed.2d 96 (1985); *Tregoning v. American Community Mut. Ins. Co.*, 12 F.3d 79, 83 (6th Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1832, 128 L.Ed.2d 461 (1994). At oral argument, counsel for the directors indicated that he intended to raise the *Tregoning* issue promptly in the district court in the

---

**1.** ERISA is codified at 29 U.S.C. §§ 1001 *et seq.* "Liability for breach of fiduciary duty" is provided by 29 U.S.C. § 1109(a).

**2.** Because the identity of the proper defendant has no bearing on the statute of limitations analysis we undertake today, we need not address this aspect of the dispute between the parties.

event that we reverse the finding of untimeliness.[3]

Without reconciling the parties' widely-divergent accounts, and without ruling on several of the directors' defenses, the district court dismissed the ERISA claim on statute of limitations grounds. The district court determined that the agents had actual knowledge of their claim on April 11, 1985, when Tassinare sent a "protest letter" to the Internal Revenue Service. Writing in response to American National's decision to terminate the plan effective December 31, 1984, Tassinare expressed the agents' dissatisfaction with the level of employer contributions:

> Almost all participants entered the Plan based on misleading information, intentional and otherwise. There is unanimous agreement that matching funds (see attached copy of schedule) were promised in addition to interest earnings. Had we been given accurate information, most of us would have sought other means of funding our retirement.

In light of the specific allegations contained in the 1985 protest letter, the district court concluded that the agents had actual knowledge of their claim at least seven years prior to the April 15, 1992, filing of suit:

> I think the statute of limitations on this particular matter has run.

> As to full knowledge and so forth, I think—I agree with defense counsel in this particular matter. [Tassinare's] letter of April 11th, 1985 articulates everything in relation to what his position is, in terms of disclosures, in terms of everything. There's certainly no doubt about that.

On appeal, the agents dispute having actual knowledge of the fiduciary breach in 1985. They also challenge the district court's ruling that their common law claims are preempted by ERISA.

## II. The Timeliness of the Agents' Action

Under 29 U.S.C. § 1113(2), a plaintiff with actual knowledge of a non-fraudulent breach of ERISA fiduciary duties must file suit within three years.[4] In the opinion of the district court, Tassinare's protest letter reflects the agents' actual knowledge of their claim as early as 1985. Applying the three-year statute of limitations, the district court concluded that this claim lapsed in 1988—well before the filing of the agents' complaint in 1992.

The agents attack the district court's analysis by insisting that—notwithstanding the serious accusations leveled in the protest letter—they did not know, at the time the letter was written, exactly what type of pension contributions American National had made. According to the agents, American National consistently refused their requests for information about their retirement benefits. Therefore, the agents argue, they did not actually learn of the directors' failure to make matching contributions until they received the final plan distribution in February, 1987.

The agents' concession that they discovered the underpayment in February, 1987, fatally wounds their case. Even if the district court mistakenly concluded that they had actual knowledge in 1985, the acquisition of equivalent knowledge two years later provides an equally-valid ground for summary

---

3. Although the district court did not rely on *Tregoning* to dismiss this suit, summary judgment would appear justified by the agents' attempt to bring this action individually, rather than on behalf of the plan. *Tregoning* and *Russell* both clearly explain that the agents have no right, as individual plan participants, to maintain a fiduciary claim for their personal benefit. *See Tregoning*, 12 F.3d at 83 ("the liability of a fiduciary is to reimburse the plan, not the individual participants") (citing *Russell*, 473 U.S. at 140, 105 S.Ct. at 3089).

4. Section 1113 provides:
   No action may be commenced under this subchapter with respect to a fiduciary's breach of

any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of—

   (1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission, the latest date on which the fiduciary could have cured the breach or violation, or

   (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation;

   except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

judgment. Since they had actual knowledge of the underpayment in February, 1987, they needed to file this action before February, 1990, which they did not.

To avert the apparent time bar, the agents challenge the district court's conception of what facts they needed to know in order to have "actual knowledge" of their claim. In the agents' view, the alleged fiduciary breach includes not only the directors' failure to make matching payments, but also the directors' *failure to sue* their own company to compel the missing payments. By pretending that the directors—as plan fiduciaries—would have to sue themselves—as the agents' employer—to extract the matching payments, the agents seek to characterize the fiduciary breach as a failure to sue, rather that an ordinary conflict of interest. Unlike the failure to make payments, which was apparent in 1987, the agents deny having actual knowledge of the failure to sue until 1990—three years after the plan assets were distributed.

■■■ We do not agree with the agents that the fiduciary breach in this case can realistically be portrayed as a failure to sue. ERISA's fiduciary standards incorporate the common law of trusts, *Central States, Southeast & Southwest Areas Pension Fund v. Central Transport, Inc.*, 472 U.S. 559, 570, 105 S.Ct. 2833, 2840, 86 L.Ed.2d 447 (1985), and that body of law provides that a trustee is liable for a failure to sue when "the trustee holds in trust a contract right against a third person and the trustee improperly refuses to bring an action to enforce the contract." IV SCOTT, THE LAW OF TRUSTS § 282.1 (1967). *See, e.g., Martin v. Consultants & Administrators, Inc.*, 966 F.2d 1078, 1089–90 (7th Cir.1992); *McMahon v. McDowell*, 794 F.2d 100, 110 (3d Cir.), *cert. denied*, 479 U.S. 971, 107 S.Ct. 473, 93 L.Ed.2d 417 (1986). Thus, the crux of a failure to sue is the mismanagement of litigation spearheaded by the fiduciary. But in this case, there was never any prospect of litigation between the employer and the plan fiduciary, because according to the agents, the directors performed *both* of these functions. As directors of the company, the defendants were at all times fully capable—if so inclined—of making the re-quested payments, which renders totally illusory any prospect of legal action brought by the directors to enforce the matching promise. Therefore, we conclude that any harm suffered by the agents was caused by the directors' deliberate refusal to make matching payments, not by the directors' failure to sue themselves.

This case is not as complex as appellants would have us treat it. The agents claim that American National has reneged on its promise to provide certain benefits. In 1985, the agents formally complained to the IRS about the underpayment of benefits. By 1987, the agents had received all of their pension benefits under the plan. Yet the plaintiffs waited until 1992 to file this suit. We agree with the district court that this claim is time-barred.

## III. The Agents' Common Law Claims

Count II of the agents' complaint asserts a claim for breach of contract, and count III of the complaint asserts a claim for intentional infliction of emotional distress. The district court determined that both of these claims were preempted by 29 U.S.C. § 1144, which declares that ERISA "supersede[s] any and all State laws insofar as they may now or hereafter relate to any employee benefit plan."

Justice O'Connor observed in *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987), that "the express preemption provisions of ERISA are deliberately expansive, and designed to establish pension plan regulation as exclusively a federal concern." *Id.* at 45–46, 107 S.Ct. at 1552 (citation omitted). Along these lines, this court "has repeatedly recognized that virtually all state law claims relating to an employee benefit plan are preempted by ERISA." *Cromwell v. Equicor–Equitable HCA Corp.*, 944 F.2d 1272, 1276 (6th Cir.1991), *cert. dismissed*, —— U.S. ——, 113 S.Ct. 2, 120 L.Ed.2d 931 (1992).

■■■ The agents' intentional infliction of emotional distress claim against the directors, arising out of the refusal to make matching payments, clearly "relate[s] to [an] employee benefit plan," and therefore that

claim is preempted. *See Kuhl v. Lincoln Nat'l Health Plan,* 999 F.2d 298, 304 (8th Cir.1993) (emotional distress claim preempted), *cert. denied,* —— U.S. ——, 114 S.Ct. 694, 126 L.Ed.2d 661 (1994); *Maciosek v. Blue Cross & Blue Shield,* 930 F.2d 536, 540 (7th Cir.1991) (same). To the extent that the breach of contract claim, arising out of the same acts, alleges a state law cause of action, that claim is also preempted. *See In re General Motors Corp.,* 3 F.3d 980, 984 (6th Cir.1993) (breach of contract claim preempted); *Gordon v. Barnes Pumps, Inc.,* 999 F.2d 133, 137 (6th Cir.1993) (same).

In their appellate brief, the agents suggest that the breach of contract claim alleges a cause of action under *federal* common law. But the "[f]ederal courts, unlike state courts, are not general common-law courts and do not possess a general power to develop and apply their own rules of decision." *Milwaukee v. Illinois,* 451 U.S. 304, 312, 101 S.Ct. 1784, 1790, 68 L.Ed.2d 114 (1981). Creation of a cause of action under federal common law is only "resorted to in absence of an applicable Act of Congress, and because the Court is compelled to consider federal questions which cannot be answered from federal statutes alone." *Id.* at 314, 101 S.Ct. at 1791 (citations omitted).

In the realm of pensions, federal common law has only been "fashion[ed] ... when it is necessary to effectuate the purposes of ERISA." *Singer v. Black & Decker Corp.,* 964 F.2d 1449, 1452 (4th Cir.1992) (citations omitted). For example, federal common law has been created to avoid "undermin[ing] ERISA's goal of expanding pension and welfare benefit plan coverage." *UIU Severance Pay Trust Fund v. Local Union No. 18–U,* 998 F.2d 509, 513 (7th Cir.1993). Similarly, the court in *Kwatcher v. Massachusetts Serv. Employees Pension Fund,* 879 F.2d 957, 965–67 (1st Cir.1989), recognized an action under federal common law in order to further "ERISA's goal of expanding pension plan coverage" and to avoid "discouraging employers from sponsoring ERISA-plans." Yet another court has "recogniz[ed] a federal common law right of action" to promote "the compelling federal interest in ensuring that ... participants and beneficiaries obtain the benefits to which they are entitled." *Diduck v. Kaszycki & Sons Contractors, Inc.,* 974 F.2d 270, 281 (2d Cir.1992).

This circuit has not yet formally embraced an ERISA cause of action under federal common law, and even if we had, we do not consider this an appropriate case in which to permit such an action to proceed. Unlike the cases cited above, the agents' lack of a remedy does not result from some awkward gap in the statutory scheme, but instead results solely from the agents' delay in seeking relief. In 29 U.S.C. § 1109, Congress expressly provided a cause of action for fiduciary breaches—a cause of action which, if promptly litigated, would provide the agents with meaningful redress for any injuries they have suffered. In such a case, where it cannot be said that federal common law is essential to the promotion of fundamental ERISA policies, the plaintiffs may avail themselves only of those remedies authorized by statute. Accordingly, we agree with the district court that the agents' common law claims are preempted.

The judgment of the district court is AFFIRMED.