William BAGSBY, Plaintiff–Appellant,

v.

CENTRAL STATES, SOUTHEAST & SOUTHWEST AREAS PENSION FUND, Defendant–Appellee.

No. 97–6209.

United States Court of Appeals, Sixth Circuit.

Argued Sept. 21, 1998.

Decided Dec. 9, 1998.

Joseph L. Lackey, Jr. (argued and briefed), Lackey, Rodgers, Price & Snedeker, Nashville, Tennessee, for Plaintiff–Appellant.

Francis J. Carey (argued and briefed), Central States, Southeast & Southwest Areas Pension Fund's Law Department, Rosemont, Illinois, David M. Cook, Manley, Burke, Lipton & Cook, Cincinnati, Ohio, for Defendant–Appellee.

Before: MERRITT, JONES, and SILER, Circuit Judges.

## OPINION

MERRITT, Circuit Judge.

In this action, the plaintiff, William Bagsby, challenges the denial of higher monthly pension benefits under § 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1132(a)(1)(B) (ERISA). The issue is whether the defendant, the Central States, Southeast and Southwest Pension Plan, acted reasonably in determining that the plaintiff did not qualify for a so-called "30–And–Out Pension" paying $2,000 a month. The trustees of the Central States Plan denied the plaintiff's claim for the 30–And–Out Pension because the plaintiff's employer, Ryder Truck Lines, did not make contributions to the Central States Plan for the requisite thirty year period. Ryder had failed to transfer the funds from its previous company pension program to the Central States Plan. The plaintiff also argues that the trustees wrongfully denied him a $1000 a month pension based on a "Class Sixteen" contribution level. The trustees denied this pension to the plaintiff because he did not meet the requisite minimum age.

The district court granted summary judgment for the defendant on both of the plaintiff's claims. On appeal, the plaintiff argues that summary judgment should be reversed in light of alleged "misrepresentations" by the trustees in determining the plaintiff's eligibility for a 30–And–Out Pension. The plaintiff also claims that the trustees violated their fiduciary duties by failing to (1) seek sufficient contributions from Ryder for the plaintiff's 30–And–Out Pension, and (2) provide timely notice of Ryder's failure to make such contributions.

## I. BACKGROUND

The fact pattern here is a little convoluted and difficult to follow. The plaintiff first applied for pension benefits from the defendant in 1991. At that time, the plaintiff sought a 30–And–Out Pension which paid $2,000 a month provided a participating employee had thirty years of "Contributory Service Credit." A participant earns Contributory Service Credit under the Central States Plan based upon the number of years that his employer has made contributions to the Plan pursuant to a collective bargaining agreement. Ryder entered into an agreement with the Teamsters Local 480 and had made such contributions on the plaintiff's behalf since 1973. Prior to becoming a union trucking firm and contributing to the Central States Plan, Ryder had made contributions to its own company pension program. Ryder had made contributions to this program on the plaintiff's behalf from 1964 to 1973.

The plaintiff's claims center on the argument that Ryder's 1964 to 1973 contributions should count toward the thirty years of Contributory Service Credit necessary for a 30–And–Out Pension under the Central States Plan. The Central States trustees rejected the plaintiff's claim because Ryder's 1964 to 1973 contributions did not satisfy the definition of Contributory Service Credit, i.e., employer contributions to the Plan pursuant to a collective bargaining agreement. Ryder made the 1964 to 1973 contributions solely to its own private pension program. Ryder did have ample opportunities to transfer these contributions to the Central States Plan in accordance with the 1973 collective bargaining agreement, but it never did. The Plan itself required Ryder in 1973 to transfer previous pension contributions to the Plan or, alternatively, vest them in the appropriate

Ryder employees. The 1973 terms of the Plan also required Ryder to amend its collective bargaining agreement with the Teamsters to include a clause mandating the transfer or vesting of prior contributions. Ryder failed to comply with any of these provisions even though its collective bargaining agreement with Teamsters required it to comply with all the terms of the Central States Plan. The members of the collective bargaining unit did not become participants in the Plan until the Central States trustees accepted Ryder into the Plan. The trustees did not notify the plaintiff that Ryder was breaching the Teamsters collective bargaining agreement or that Ryder was refusing to comply with the Plan's transfer or vesting provision.

As a result of Ryder's failure to comply with the Plan's transfer or vesting provision, the trustees originally denied Ryder admission to the Plan in 1973, despite the fact that Ryder had already begun making contributions to Central States. Ryder continued to make contributions to the Plan after 1973 in spite of the fact that it was not a formal Plan participant. Under the express terms of the Plan, employer contributions did not create an enforceable contract between an employer and the Plan unless the employer was first accepted into the Plan. Finally, in 1980, after seven years of contributions by Ryder, the trustees decided to admit Ryder and its employees into the Plan without requiring Ryder to transfer or vest the previous contributions to its own pension program. The trustees essentially "waived" this requirement, thereby making a "specific exception" to the terms of the Plan. The trustees noted that they made this exception because Ryder employees would otherwise lose the contributions that Ryder had made on their behalf from 1973 to 1980. The trustees did not notify the plaintiff that they had waived the transfer or vesting requirement for Ryder's 1964 to 1973 company pension contributions.

The 1980 acceptance of Ryder into the Plan was retroactive to 1973, the date when Ryder first began making contributions to the Plan on behalf of its employees. Though Ryder never transferred its 1964 to 1973 contributions, the trustees still granted the plaintiff "Service Credit" for these funds. Under the terms of the 1980 Plan, a participant earned Service Credit when his employer simply made contributions to the Plan, with or without an underlying collective bargaining agreement. All pensions in the Central States Plan were calculated based on Service Credit in 1980. The concept of "Contributory Service Credit" was not used in the Plan to describe contribution levels until 1982. In 1982 and thereafter, the trustees established new pensions paying higher monthly benefits based exclusively on Contributory Service Credit, such as the 30–And–Out Pension sought by the plaintiff. The trustees did not specifically inform the plaintiff that Ryder's 1964 to 1973 company pension contributions did not count as Contributory Service Credit under these pensions until 1989. The trustees did, however, inform the plaintiff in 1981 that he would get Service Credit for the 1964 to 1973 contributions.

Though the Central States trustees ruled in 1991 that the plaintiff did not have the necessary thirty years of Contributory Service Credit for a 30–And–Out Pension, the trustees did advise the plaintiff that he could qualify for a "Deferred Pension" based upon twenty years of Contributory Service Credit. The trustees informed the plaintiff that he would need to make three years of "Self–Contributions" before becoming eligible since he had only 17.5 years of Contributory Service Credit (i.e., from 1973 to 1991).[1] The plaintiff made these Self–Contributions from 1991 to 1993. In 1995, the plaintiff claimed that he was entitled to a Deferred Pension for $900 a month based upon twenty years of Contributory Service Credit at the "Class Sixteen" contribution level. Class Sixteen contributions are made by a participating employer at the weekly rate of $79

---

1. The Central States Plan allows participants to make Self–Contributions for a limited duration in order to qualify for a Contributory Service Credit pension. In fact, the plaintiff's 1991 request for a 30–And–Out Pension assumed that the plaintiff could make Self–Contributions for three additional years since he claimed he had only twenty-seven years of Contributory Service Credit (i.e., 1964 to 1991).

under the Plan. The trustees rejected the plaintiff's request and granted him a $700 a month Deferred Pension based upon the "Class Fifteen" contribution level. A participating employer makes Class Fifteen contributions at the weekly rate of $73. Ryder had made only Class Fifteen contributions on the plaintiff's behalf.

The plaintiff claims that he should receive Class Sixteen benefits because he worked briefly under union contract for a different trucking company that made pension contributions to the Central States Plan at the Class Sixteen level. The plaintiff went to work for the Holland trucking company for only eleven days as a "casual employee" in 1991 after Ryder fell into bankruptcy earlier that year. Holland made contributions to the plaintiff's pension at the Class Sixteen level. The Central States trustees conceded that the plaintiff's service with Holland, as short as it was, could have qualified him for a pension at the Class Sixteen level, but the trustees found that the plaintiff did not meet the relevant age requirement for Class Sixteen benefits. These benefits were available to the plaintiff at age fifty-seven. The plaintiff was only fifty-three when he first applied for Class Sixteen benefits. The trustees thus informed the plaintiff in 1996 that the most he was eligible for was a Deferred Pension paying $700 a month at the Class Fifteen level.

In June 1996, the plaintiff filed this lawsuit in the district court claiming that he is entitled to a 30–And–Out Pension for $2000 a month based upon thirty years of Contributory Service Credit beginning in 1964. In the alternative, the plaintiff claims that he is entitled to a Deferred Pension for $1000 a month based upon twenty years of Contributory Service Credit at the Class Sixteen contribution level. Though the plaintiff originally sought a $900 a month Deferred Pension, the plaintiff inexplicably augmented his claim in this lawsuit. The defendant offered the plaintiff a Deferred Pension paying $700 a month which the plaintiff began receiving in 1995.

## II. ANALYSIS

The plaintiff brings this action under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), which provides a participant in an ERISA plan with standing to bring civil actions to recover benefits that are due to the participant under the terms of a plan. ERISA applies to all pension plans, such as the one at issue here, that are established or maintained by an organization representing employees engaged in commerce or in an industry affecting commerce. *See* ERISA § 4(a), 29 U.S.C. § 1003(a). The plaintiff and his fellow Ryder employees were prompted to join the Central States Plan by the Teamsters collective bargaining agreement.

 If a plan endows administrators with discretionary authority to interpret the plan's terms or determine participant eligibility, a court should subject administrators' interpretations to a deferential standard of review. *See Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989); *Whisman v. Robbins,* 55 F.3d 1140, 1143 (6th Cir.1995). The Court will give due deference to the determinations of the Central States trustees at issue in this case because the Central States Plan clearly provides the trustees with discretionary authority. The Plan incorporates the terms of an underlying trust agreement which vests the trustees with "discretionary and final authority" in deciding benefit claims and construing Plan terms. Deference to the trustees' discretion thus requires the Court simply to inquire whether the trustees' determinations with regard to the plaintiff were arbitrary or capricious. *See Davis v. Kentucky Fin. Cos. Retirement Plan,* 887 F.2d 689, 694 (6th Cir.1989). An interpretation or determination under ERISA is not arbitrary and capricious "if it is possible to offer a reasoned explanation, based on the evidence." Id. at 693 (quoting *Pokratz v. Jones Dairy Farm,* 771 F.2d 206, 209 (7th Cir.1985)).

 The record shows that the Central States trustees did not act unreasonably in determining that the plaintiff did not qualify for a 30–And–Out Pension. The trustees have an obligation to maintain the actuarial soundness of their pension plan and not to

grant pensions that violate the terms of the Plan. Granting pensions in violation of the Plan could subject the trustees to liability. *See* ERISA § 406(a)(1)(D), 29 U.S.C.A. § 1104(a)(1)(D); *Patterson v. Shumate,* 504 U.S. 753, 760, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992) ("A plan participant, beneficiary, or fiduciary, or the Secretary of Labor may file a civil action to 'enjoin any act or practice' which violates ERISA or the terms of the plan."). The trustees correctly recognized that the plaintiff never had the thirty years of Contributory Service Credit necessary for a 30–And–Out Pension. When the plaintiff first inquired about this pension in 1991, the trustees concluded that the plaintiff had only 17.5 years of Contributory Service Credit based upon Ryder's contributions to the Central States Plan from 1973 to 1991. The trustees noted that Ryder's contributions to its company pension program between 1964 and 1973 could not qualify the plaintiff for Contributory Service Credit because Ryder never made these contributions to the Plan at all, let alone as required under a collective bargaining agreement.[2] There is no dispute that Ryder never transferred its 1964 to 1973 contributions to the Plan. The trustees' calculation of the plaintiff's Contributory Service Credit was thus perfectly in tune with the terms of the Central States Plan.

■ The plaintiff, however, claims that the defendant acted arbitrarily and capriciously because it misrepresented the reasons for the plaintiff's lack of the requisite Contributory Service Credit. Even under a deferential standard of review, a court must still inquire whether the decisions of a pension plan administrator are based on "substantial evidence" and not on half-truths or worse yet, plain lies. *Odom v. United Mine Workers of America Health & Retirement Funds,* 687 F.2d 843, 846 (6th Cir.1982). There is nothing in the record, however, that indicates the trustees were anything less than truthful with the plaintiff. The plaintiff points to a letter written by the Central States Benefit Claim Review Committee in February 1992, before the trustees' final ruling in June 1992. While the letter denied Contributory Service Credit for Ryder's 1964 to 1973 contributions because they did not meet the Plan's definition, it also provided an additional reason. The letter instructed that Ryder's 1964 to 1973 contributions could only count as Contributory Service Credit if they had satisfied the Plan's definition *and* if Ryder had sent to the trustees a certified listing of members in Ryder's company pension program and the individual amounts of monies accrued or vested. The plaintiff claims that this statement was a misrepresentation because Ryder did in fact send such information to the Central States trustees. As evident in the record, the defendant did indeed receive a certified listing of members in the Ryder pension program, though it never did receive an individual listing for the monies accrued to those members who were not vested. The Review Committee's letter clearly indicated that the receipt of such information from Ryder was a necessary precondition to the conferral of Contributory Service Credit for Ryder's 1964 to 1973 contributions. Since the trustees did not receive the full information that the plaintiff claimed they did, there is no basis for the Court to hold that the defendant acted unreasonably in explaining the reasons

---

2. The Court does not accept the argument urged on us by the defendant that it was impossible for the plaintiff ever to receive Contributory Service Credit for Ryder's 1964 to 1973 contributions. The defendant argues that the plaintiff could never obtain Contributory Service Credit for these contributions because the Plan did not use this concept to define contribution levels until 1982. However, the defendant offers no explanation why the 1982 conceptualization of Contributory Service Credit did not redefine pre-1982 contributions for the purposes of determining post–1982 pension eligibility. The defendant has in fact conceded that pre–1982 contributions could be counted as Contributory Service Credit

by offering the plaintiff a Deferred Pension based on twenty years of Contributory Service Credit beginning in 1973.

Ryder's 1964 to 1973 contributions would have counted as Contributory Service Credit for the plaintiff had Ryder originally complied with the Plan's terms. By transferring its 1964 to 1973 contributions to the Plan and amending the collective bargaining agreement accordingly, Ryder would have rendered these contributions nothing short of Contributory Service Credit, i.e., contributions to the Plan pursuant to a collective bargaining agreement. The defendant's argument to the contrary has confused the issue and wasted everyone's time.

for the plaintiff's ineligibility for a 30–And–Out Pension.

Alternatively, even if the Review Committee letter did falsely represent that Ryder had failed to send the defendant the requisite information, it is difficult to see how the plaintiff was injured by such a misrepresentation. Misrepresentation or no misrepresentation, the plaintiff could never obtain Contributory Service Credit for Ryder's 1964 to 1973 contributions unless Ryder had transferred them to the Plan pursuant to a collective bargaining agreement. It is undisputed that Ryder never did.

■ The plaintiff also seeks relief under ERISA § 502(a)(1)(B) for the trustees' alleged violation of their fiduciary duties in connection with the plaintiff's eligibility for a 30–And–Out Pension. It is important to recognize that the plaintiff does not bring a separate claim for breach of fiduciary duty under ERISA § 409(a), 29 U.S.C. § 1109(a), which provides liability for a plan administrator's breach of fiduciary duty. Section 409 is enforced under ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2). The plaintiff did not assert a § 502(a)(2) action for breach of fiduciary duty in the district court, and the law would not allow him to claim individual relief in such an action in any event. The Supreme Court held in *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 140–43, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985), that § 409(a) allows relief only for an entire plan and not for individual participants or beneficiaries. Some courts have held, however, that a claim of breach of fiduciary duty may still be raised in a § 502(a)(1)(B) action for individual relief but only insofar as relevant to a plaintiff's claim that plan administrators acted arbitrarily and capriciously. *See, e.g., Fischman v. Blue Cross & Blue Shield*, 775 F.Supp. 513, 517 (D.Conn.1991). The Court agrees that an alleged breach of fiduciary duty may indeed be relevant to a § 502(a)(1)(B) claim for recovery of individual benefits, but the record does not support the view that the trustees violated any fiduciary duty in the context of the plaintiff's claim for a 30–And–Out Pension.

■ The plaintiff first argues that the trustees violated their fiduciary duties by neglecting to inform him that he would not get Contributory Service Credit for Ryder's 1964 to 1973 company pension contributions. The Court finds that the plaintiff's claim is without merit. The trustees had no duty to inform the plaintiff that Ryder was violating its collective bargaining agreement with Teamsters Local 480. Though the agreement did require Ryder to comply with all the terms of the Central States Plan, including the provision requiring transfer or vesting, the trustees had no duty to enforce the agreement until they accepted Ryder into the Plan. The agreement specifically stated that it was not "binding upon the Fund" until the trustees accepted it. The Central States trustees did not accept the agreement and allow Ryder into the Plan until August 1980. The trustees were not a party to the collective bargaining agreement and thus had no duty under the collective bargaining agreement to advise the plaintiff that Ryder was breaching its agreement with Local 480. The enforcement of this agreement was the duty of Local 480. The plaintiff also complains that he was never notified that the trustees admitted Ryder into the Central States Plan without requiring the transfer or vesting of Ryder's previous contributions to its company pension program. A trustee, however, does not violate a fiduciary duty by failing to report an employer's refusal to contribute to a plan if that employer has no specific duty to contribute.

The Central States trustees had no duty to give notice to the plaintiff before or during the acceptance of Ryder into the Plan. Even after Ryder was accepted into the Central States Plan, the trustees still had no duty to inform the plaintiff that he could not receive Contributory Service Credit for Ryder's 1964 to 1973 contributions. The plaintiff claims that he never received timely notice of this fact. The record shows that it was not until 1989, nine years after Ryder was accepted into the Plan, that the trustees first informed the plaintiff that he received only "Non–Contributory Service Credit" for Ryder's 1964 to 1973 contributions. The trustees never, however, made misrepresentations to the plaintiff by informing him that he received Contributory Service Credit for these

contributions. Furthermore, the trustees did notify the plaintiff of the general status of his credit under the Plan soon after Ryder was accepted in 1980. A 1981 letter by the trustees notified the plaintiff that he had sixteen years of Service Credit, though not Contributory Service Credit, under the Plan as of 1980, beginning in 1964. Contributory Service Credit was not a term used by the Central States Plan in 1981, so it would have been impossible for the trustees to notify the plaintiff then that he could not receive Contributory Service Credit for Ryder's 1964 to 1973 contributions. Once the term Contributory Service Credit was first used under the Plan in 1982, the trustees again had no duty to notify the plaintiff regarding the 1964 to 1973 contributions because the plaintiff experienced no material change in the status of his credit with the Plan. Ryder's 1964 to 1973 contributions could not have counted for Contributory Service Credit before the term was used by the Plan in 1982, and they did not count for it once the term was used. The fact remains that Ryder never transferred its previous contributions to the Plan nor amended its collective bargaining agreement as required by the Plan's definition of Contributory Service Credit.

The trustees thus did not violate any of their fiduciary duties with regard to notifying the plaintiff of material changes in his benefit status under the Central States Plan. This is not to say that the trustees' communication with the plaintiff was a profile in clarity. In a perfect world, the trustees would have anticipated the dispute before the Court today and then sought to prevent it by instructing the plaintiff in no uncertain terms in 1982 that he would never get Contributory Service Credit for Ryder's 1964 to 1973 contributions unless Ryder transferred them to the Plan under its collective bargaining agreement. The fact that the trustees did not do this, however, does not constitute a breach of fiduciary duty even though it did confuse the plaintiff.

The plaintiff also claims that the trustees breached their fiduciary duties by failing to force Ryder to transfer its company pension contributions to the Central States Plan. Again, the trustees did not violate their fiduciary duties in this respect because they had no duty to collect Ryder's previous contributions. A trustee of an ERISA plan is not duty-bound to bring suit to collect contributions from an employer unless an employer is bound contractually to its employees to make those contributions. *See Tassinare v. American Nat'l Ins. Co.*, 32 F.3d 220, 224 (6th Cir.1994). This Court in *Tassinare* noted that ERISA incorporates the "common law of trusts," so a trustee of an ERISA plan is duty-bound to enforce the obligations of an employer under the plan for the benefit of the plan's beneficiaries. Here, Ryder never had an obligation under the Plan itself to transfer or vest its previous pension contributions. The trustees waived this provision upon accepting Ryder into the Plan 1980. Admittedly, Ryder was required to comply with the transfer or vesting provision under the terms of the 1973 Teamsters collective bargaining agreement, which required compliance with all the Plan's terms. However, the agreement specifically stated that it was not binding upon the Plan until it was accepted by the Plan's trustees. When the trustees accepted the agreement and Ryder in 1980, they also waived the transfer or vesting requirement. Ryder was thus no longer required to comply with this requirement, and the trustees certainly had no duty to seek contributions that Ryder was not obligated by the Plan to make.

The Court finds no evidence that the trustees acted in bad faith by waiving the transfer or vesting requirement. The plaintiff does not offer any evidence that the trustees' waiver of this requirement was meant to hurt rather than help Ryder employees. Ryder refused to transfer or vest its previous company pension contributions, and the trustees consequently refused to accept it into the Plan. Ryder continued, though, to make contributions to Central States as if it had been accepted. In 1980, the trustees realized that the plaintiff and his coworkers would never see Ryder's Central States contributions unless Ryder was accepted without insisting on the transfer or vesting of Ryder's previous contributions. No doubt, the subsequent cost of Ryder's admission into the Plan was the loss of the transfer or vesting requirement. This was a cost, however, that was

imposed on the plaintiff by his own employer, and by the failure of Local 480 to enforce the collective bargaining agreement.

Finally, the plaintiff did not offer any evidence on briefs or at oral argument to indicate that there are disputed material facts regarding the trustees' denial of his eligibility for Class Sixteen benefits. Neither does the plaintiff support his argument that the trustees acted arbitrarily or capriciously in denying Class Sixteen benefits. The record amply demonstrates that the trustees acted reasonably in determining that the plaintiff was eligible at the most for a pension of $700 a month at the Class Fifteen benefit level.

For the foregoing reasons, the judgment of the district court is AFFIRMED.