**TRUSTEES OF the CARPENTERS' PENSION TRUST FUND–Detroit and Vicinity and Trustees of the Millwrights' Local 1102 Supplemental Pension Fund, Plaintiffs,**

v.

**AAA MORTGAGE CORPORATION, Defendant.**

**No. 99–74123.**

United States District Court,
E.D. Michigan,
Southern Division.

July 3, 2003.

Lynn F. McGuire, John I. Tesija, Novara, Tesija Michela & Prichs, P.C., Southfield, MI, Counsel for Plaintiffs.

Gerard V. Mantese, Mark C. Rossman, Peggy Rancilio, Mantese and Associates, PC, Troy, MI, Counsel for Defendant.

Christopher P. Legghio, Martens, Ice, Geary, Klass, Legghio, Israel & Gorchow, P.C., Southfield, MI, Co-counsel for Plaintiffs Millwrights.

*ORDER DENYING PLAINTIFF CARPENTERS' DECEMBER 12, 2002 SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT; DENYING DEFENDANT'S MAY 2, 2003 MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF MILLWRIGHTS' MAY 16, 2003 SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT; AND GRANTING DEFENDANT'S APRIL 29, 2003 MOTION FOR SUMMARY JUDGMENT BASED UPON ERISA STATUTE OF LIMITATIONS*

O'MEARA, District Judge.

This matter came before the court on plaintiff Carpenters' December 12, 2002 second motion for partial summary judgment; defendant AAA Mortgage's April 29, 2003 motion for summary judgment based upon ERISA statute of limitations and preemption; defendant AAA Mortgage's May 2, 2003 motion for summary judgment for lack of factual and legal foundation; and plaintiff Millwrights' May 16, 2003 second motion for partial summary judgment. The issues were fully briefed, and oral argument was heard June 20, 2003.

### *BACKGROUND FACTS*

The plaintiff pension funds filed suit August 20, 1999, to obtain documents from defendant AAA Mortgage, a mortgage company that had been fired by the funds. In a November 19, 1999 letter from John Tesija, plaintiff Carpenters' counsel, to Richard Maddin, AAA's initial counsel, Tesija stated that once AAA Mortgage turned over the documents, the case would be dismissed. Defendant's Ex. 3. At some point, AAA finally relinquished the documents Plaintiffs had been seeking. However, instead of dismissing the complaint as initially contemplated by the parties, Plaintiffs filed the First Amended Com-

plaint ("FAC") a year later, in December 2000. Since then the parties have expended exorbitant resources in pursuing and defending the claims. The current docket sheet has recorded more than 425 entries in this case, and Defendant claims it has already spent over one million dollars in attorneys' fees.

The FAC alleged breach of fiduciary duty under ERISA in Count I; it is the only federal claim alleged. Though not specifically pleaded in the FAC, Plaintiffs have raised claims relating to AAA's collection of mortgage fees from borrowers, the interest rates charged by AAA, AAA's use of addenda to the loans, and AAA's lack of aggressiveness in initiating foreclosure proceedings as breaches of AAA Mortgage's fiduciary duty. Count II alleges "Breach of Fiduciary Duty under State Law"; Count III alleges breach of contract; Count IV alleges fraud and misrepresentation; Count V alleges "Claim and Delivery"; Count VI alleges misappropriation of trade secrets; and Count VII alleges conversion.

Defendant's bases for seeking summary judgment in its April 29, 2003 motion is that Plaintiffs' claims are barred by ERISA's three-year statute of limitations and that Plaintiffs' state claims are preempted by ERISA.

### *LAW AND ANALYSIS*

ERISA's statute of limitations provides, in pertinent part,

No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty or obligation under this part, or with respect to a violation of this part, after the earlier of—

(1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission, latest date on which the fiduciary could have cured the breach or violation, or

(2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation

except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

29 U.S.C. § 1113, ERISA § 413.

Actual knowledge is deemed to exist for purposes of the statute of limitations where the plaintiff has knowledge of the facts giving rise to the claims. It is not necessary for the plaintiff to have knowledge of the actual legal breach or to know of all the facts giving rise to a claim. "[T]he relevant knowledge for triggering the statute of limitations is knowledge of the facts or transaction that constituted the alleged violation. Consequently, it is not necessary for a potential plaintiff to have knowledge of every last detail of a transaction, or knowledge of its illegality." *Million v. Trustees of the Central States, Southeast and Southwest Areas Pension Fund*, 50 Fed.Appx. 196 (6th Cir.2002) (quoting *Martin v. Consultants & Adm'rs, Inc.*, 966 F.2d 1078, 1086 (7th Cir.1992)).

In *Tassinare v. American Nat'l Ins. Co.*, 32 F.3d 220 (6th Cir.1994), the United States Court of Appeals for the Sixth Circuit affirmed a decision of Judge Bernard A. Friedman that a plaintiff's fiduciary claim was time barred by ERISA. The court noted that Judge Friedman was correct in dismissing the claim on statute of limitations grounds even "[w]ithout reconciling the parties' widely-divergent accounts." *Id.* at 223.

On March 25, 1993, John Reddam, AAA Mortgage's president, made a detailed salespitch of the prospective mortgage program at a Millwrights trustees meeting.

Defendant's Exs. 4 & 6. In attendance were the trustees, the Millwrights' legal counsel, representatives from the plan manager's office, and the Fund's financial advisors. Defendant's Ex. 4(A) at 1.

The minutes of the meeting reflect that the trustees, their counsel, and advisors were well aware of many of the facts on which they now base their claims. The minutes show that the issues discussed included the following: that some borrowers would be pledging their pensions as collateral, that the loans would be salable to a bank rather than to governmental agencies, and that the interest rates would be governed by rates published by the *Wall Street Journal.* Defendant's Ex. 4(a) at 2–3. Furthermore, materials provided to the trustees during the discussion show that the Fund would have to take certain steps to permit the pledging of pension benefits as collateral to avoid a prohibited transaction under ERISA. The materials envisioned that the Millwrights "adopt the necessary resolution into the Trust Agreement, permitting the participant's [*sic*] to pledge up to 50% of their present value of vested accrued pension benefit at the time of loan application." Defendant's Ex. 6 at 1. Thus, not only did the Millwrights know that pensions would be pledged; but they knew that their internal plan documents would have to be amended, and, if they were not amended, that the trustees—the fiduciaries of the pension trust fund—might be engaging in prohibited transactions when they purchased loans from AAA Mortgage containing a pledge of pension funds.

Although the plaintiff funds claim that Defendant should have been more aggressive in foreclosing on certain loans, from the inception of the program it was anticipated "that no more than 1% of the loans would ever be foreclosed on, and in very rare circumstances would the participant suffer any loss of pension," and that fore-closure would occur only "[i]n the event of default that is not curable by the Participant." *Id.* at 5, ¶ 8.

The trustees also knew that, as is the custom in the mortgage banking industry, loan origination fees would be charged to borrowers. In the document entitled "LETTER TO PARTICIPANT," which was included in Reddam's presentation at the trustees' meeting, it is plainly stated that one of "the principal features of the mortgage loan program" would be a **"Loan Origination Fee"** with a **"Minimum $400.00"** or of **"1%."** *Id.* at 6 (emphasis in original).

Millwrights trustee Milford Woodbeck testified at his deposition that he knew that in cases in which a borrower missed payments, the payment(s) might be added on at the end of the loan repayment period and that AAA Mortgage would not be quick to foreclose on borrowers who went into default and had sufficient equity in the property. Defendant's Ex. 23 at 23–24. Trustee Jerry Moore also testified at his deposition that he knew about mortgage extensions from the inception of the program. Defendant's Ex. 24 at 11.

█ Thus, in 1993, the Millwrights trustees knew about and agreed to the fees AAA Mortgage was charging, the non-salability of the loans to governmental agencies, the interest rates to be charged, the non-aggressive manner of foreclosure upon borrowers, and the fact that pensioners would be pledging pensions as collateral for loans. With full knowledge of these aspects of the program, the Millwrights trustees unanimously passed a motion to commit three million dollars to it and entered into the agreement with the Millwrights Fund on or about November 1, 1993. Having actual knowledge more than six years prior to the time of filing their suit, plaintiff Millwrights' claims are time

barred pursuant to 29 U.S.C. § 1113, ERISA § 413.

The trustees of the Carpenters' Fund also knew the aspects of the program before signing their agreement with AAA Mortgage in 1995, after Reddam made a similar presentation to the trustees of the Carpenters' Fund. As shown by the minutes of that meeting, the trustees, like those of the Millwrights' Fund, knew that the program involved participants pledging their pension benefits, knew that AAA Mortgage would make accommodations to borrowers to avoid foreclosure, and knew that origination fees and costs would be charged at the closing. Defendant's Ex. 5 at 5–6. And again, the presentation materials provided that the Carpenters' Fund would be required to amend their initial plan documents to allow participants to pledge up to 50% of the present value of vested accrued pension benefits and to provide that the prevailing interest rate would be determined by the *Wall Street Journal.* In addition, the 1995 agreement not only allowed borrowers to pledge pension funds, it also allowed for loans for people to build or remodel their homes, thereby making the loans not saleable to governmental agencies *ab initio.* Defendant's Ex. 25 at 26. Ultimately, the Carpenters' Fund committed ten million dollars to the program.

The Funds' actual knowledge of AAA Mortgage's collection of origination fees and costs being charged to borrowers is reinforced by the fact that trustees themselves took out mortgages under the programs and knowingly accepted the terms of which they now complain. Millwrights and Carpenters chairman and trustee Walter Mabry took out a loan through the program in January 1994. Defendant's Ex. 9 at 86–89, 95, 97, 100. Mabry paid all of the origination and closing costs charged to him by AAA Mortgage. *Id.* at 88–89. Carpenters trustee Joseph Gambi-

no did the same. Defendant's Ex. 11 at 11.

Even more telling, Millwrights trustee Ronald Krochmalny refinanced his home mortgage through the program in February 1994. Initially, he did not pay any fees and costs; they were waived by Defendant because Krochmalny had paid them to another lender less than a year prior to that time. During a 1995 audit by the Department of Labor ("DOL"), the waiver of those fees was brought to the Millwrights' Fund's attention. Thus, the DOL put the Millwrights on actual notice not only that AAA Mortgage was charging those fees, but also that AAA Mortgage was *required* to charge them to everyone without exception. Through a reading of the series of letters between the Millwrights' Fund's counsel and AAA Mortgage regarding this matter, there can be no question that the Millwrights' Fund had actual knowledge in 1995 that AAA Mortgage was charging borrowers these fees. Defendant's Ex. 12.

▇ The Funds argue that the court should apply ERISA's six-year statute of limitations because this is a case involving "fraud or concealment." 29 U.S.C. § 1113, ERISA § 413. However, this is simply not a case involving fraud or concealment as contemplated by ERISA. There can be no question that from the very inception of the program, the funds' trustees themselves, as well as their attorneys, knew the terms embodied in the mortgage program and the manner in which it would be administered. This knowledge is shown by the trustees' deposition testimony, their own meeting minutes, AAA's monthly reports advising the trustees of the interest rates being charged, and the participation in the program of three of the trustees themselves as borrowers. Thus, Plaintiffs' claims for breach of fiduciary duty are time barred by the three-year statute of

limitations provided in 29 U.S.C. § 1113, ERISA § 413.

■ The remainder of Plaintiffs' claims are state law claims that must be dismissed because they are preempted by ERISA. Pursuant to 29 U.S.C. § 1144(a), ERISA § 514, the statute preempts all state law claims to the extent they "relate to any employee benefit plan." The Untied States Supreme Court has interpreted the phrase "relate to" expansively, holding that a state law "relates to" a benefit plan in the normal sense of the phrase if it has a connection with or reference to such a plan. *Shaw v. Delta Air Lines*, 463 U.S. 85, 97, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983).

In this case all of Plaintiffs' state law claims are preempted by ERISA because they are based upon obligations arising from AAA's alleged "fiduciary" relationship to the Funds and/or from the underlying basis of Count I of the FAC. Count III for breach of contract, for example, is based upon the same allegations used to support the ERISA claim in Count I and seeks the same relief. Furthermore, all of Counts II through VII relate to AAA's alleged fiduciary responsibilities. As such, all of those claims are preempted under ERISA.

### *ORDER*

For the reasons set forth above, it is hereby **ORDERED** that defendant AAA Mortgage's April 29, 2003 motion for summary judgment is **GRANTED**.

It is further **ORDERED** that plaintiff Carpenters' December 12, 2002 second motion for partial summary judgment is **DENIED**.

It is further **ORDERED** that defendant AAA Mortgage's May 2, 2003 motion for summary judgment for lack of factual and legal foundation is **DENIED**.

It is further **ORDERED** that plaintiff Millwrights' May 16, 2003 second motion

for partial summary judgment is **DENIED**.