*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0326P (6th Cir.)
File Name: 03a0326p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

LOCAL 6-0682
INTERNATIONAL UNION OF
PAPER, ALLIED-INDUSTRIAL,
CHEMICAL & ENERGY
WORKERS, AFL-CIO, CLC,
ex rel National Industrial
Group Pension Plan, f/k/a
Local 7682, United
Paperworkers International
Union,
     *Plaintiff-Appellant,*

No. 01-2680

*v.*

NATIONAL INDUSTRIAL
GROUP PENSION PLAN, an
ERISA pension plan;
NATIONAL INDUSTRIAL
GROUP PENSION PLAN
ADMINISTRATIVE AGENCY,
and its administrator, a
foreign corporation,
     *Defendants-Appellees.*

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 00-00419—Robert Holmes Bell, Chief District Judge.

Argued: April 30, 2003

Decided and Filed: September 11, 2003

Before: MOORE and ROGERS, Circuit Judges; KATZ,
District Judge.[*]

_____

## COUNSEL

**ARGUED:** Jeffrey A. Heldt, KORNEY & HELDT,
Bingham Farms, Michigan, for Appellant. Patrick F. Hickey,
DYKEMA GOSSETT, Detroit, Michigan, for Appellees.
**ON BRIEF:** Jeffrey A. Heldt, KORNEY & HELDT,
Bingham Farms, Michigan, for Appellant. Patrick F. Hickey,
DYKEMA GOSSETT, Detroit, Michigan, for Appellees.

_____

## OPINION

_____

ROGERS, Circuit Judge. Plaintiff Local 6-0682 ("Union")
appeals the district court's grant of summary judgment to the
defendants National Industrial Group Pension Plan
("NIGPP") and the National Industrial Group Pension Plan
Administrative Agency ("Agency"). The Union seeks to
recover benefits under the Employee Retirement Income
Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1461,

_____

[*]The Honorable David A. Katz, United States District Judge for the
Northern District of Ohio, sitting by designation.

for the Agency's negligence in providing, as a courtesy, a benefits-amount quotation that turned out to be erroneous. Because we decline to infer a federal common law cause of action for negligence in giving advice to the Union regarding ERISA plan benefits, we affirm.

The Union is the exclusive bargaining agent for its approximately 350 members, all of whom are employed by the Kalamazoo facility of Checker Motor Corp. ("Checker"). Pursuant to an agreement between the Union and Checker, all members participate in the NIGPP, a multi-employer pension plan that is an "employee pension benefit plan" within the meaning of ERISA, 29 U.S.C. § 1002(2)(A), and consequently is governed by and subject to ERISA. The NIGPP, in turn, is administered by the Agency. The Agency itself is a "third-party administrator" in ERISA parlance. *See Freimark & Thurston Agency, Inc. v. Nat'l City Bank of Dayton*, 231 F. Supp. 2d 713, 720 n.8 (S.D. Ohio 2002).

In March of 1999 the Union and Checker were re-negotiating their collective bargaining agreement. On March 15, before the parties had begun negotiating pension benefits, the Agency sent the Union a Supplement Quotation letter to aid the Union in its pension negotiations. The letter explained that "[t]his quotation . . . is consistent with the applicability of your last certified increase" and stated that "[a] $.10 increase in the rate of contribution will provide a $3.55 increase in Benefit Level." The Agency routinely sends such Supplement Quotations to its participant groups on the eve of collective bargaining—a service it provides as a courtesy and not as a matter of statutory or contractual obligation.

The Agency in the past had calculated the Union's benefits increases with the understanding that the increases would apply to "all service," which includes a participant's past service years. The Supplement Quotation, however, incorrectly assumed, without stating, that the increased

benefit would apply to "future service only." Consequently, the Supplement Quotation's prediction of "a $3.55 increase in Benefit Level" overstated the return the Union members would receive in exchange for Checker's $.10 increase in the rate of contribution.

The parties became aware of the error only after the Union had negotiated a $.10 per hour increase in the contribution rate with Checker, at which time it was essentially too late to change anything. At that point the Agency sent the Union a letter explaining its error; it apologized, but it did not adjust the Union members' benefits to the Supplement Quotation's $3.55 level. Later, however, the Agency retroactively increased the Union members' benefits three times—apparently due to the NIGPP's favorable economic performance—to a total benefit level that exceeded even the inflated level provided in the Supplement Quotation.

The Union filed a negligence suit against the Agency and NIGPP in district court, seeking to recover on behalf of its members the difference between the benefits predicted in the Supplement Quotation and the benefits actually received (without regard to the later increases). The district court dismissed the case, finding that the Union lacked statutory standing to bring an ERISA claim, and that its negligence claim was preempted by ERISA. On appeal the Union bases jurisdiction for its suit solely on ERISA, because the NIGPP plan that the Agency administers is an ERISA plan and because the Union characterizes the suit as one "by and on behalf of participants to enforce rights and obtain relief under ERISA."

We review *de novo* the district court's order granting summary judgment. *Bush v. Dictaphone Corp.*, 161 F.3d 363, 367 (6th Cir. 1999). Viewing all of the evidence in the light most favorable to the Union as the non-moving party, we may affirm only if there is no genuine issue of material

fact and the Agency is entitled to judgment as a matter of law. *Id*. at 368.

The Union does not argue that it has statutory standing under ERISA.[1] Even where parties that have statutory standing are concerned, ERISA itself provides no cause of action to recover money damages for a third-party administrator's negligence.[2] The Union proposes that we overcome both difficulties by creating a federal common law cause of action for negligence under ERISA, a cause of action that would allow a party to recover money damages from a third-party administrator for injuries proximately caused by the administrator's negligence in making ERISA-plan-related

---

[1] The statute's standing provision, § 502, lists four categories of "[p]ersons empowered to bring a civil action"—namely, participants, beneficiaries, plan fiduciaries, and the Secretary of Labor—and this list is exclusive. 29 U.S.C. § 1132(a); *Whitworth Bros. Storage Co. v. Cent. States, Southeast & Southwest Areas Pension Fund*, 794 F.2d 221, 228 (6th Cir. 1986) (holding that the court had no jurisdiction under § 502 to consider the ERISA claim of an employer—a party not listed in § 502—because "Congress intended to limit the parties who could maintain actions pursuant to section 502," and "section 502 is an exclusive grant of jurisdiction"). Unions are not included in the § 502 list, and though a union might qualify as a "fiduciary" under § 502(a)(3), 29 U.S.C. § 1132(a)(3), *see Forys v. United Food & Commercial Worker's Int'l Union*, 829 F.2d 603 (7th Cir. 1987), the Union makes no effort to show how it fits this category. *See also New Jersey State AFL-CIO v. New Jersey*, 747 F.2d 891, 893 (3d Cir. 1984) ("It is clear from the statute that labor unions are neither participants nor beneficiaries").

[2] Though, as is mentioned below, ERISA does allow participants and beneficiaries to seek equitable relief for certain disclosures, *see generally* ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3)*, it does not allow money damages in such cases. *See Mertens v. Hewitt Assocs.*, 508 U.S. 248, 255 (1993) (holding that compensatory damages are legal damages, and consequently are not available under § 502(a)(3)).

---

disclosures.[3] Further, in light of the facts of this case it is evident that the Union would have this cause of action extend to negligence in disclosures that are offered gratuitously, out of no obligation either under contract or under ERISA.

Federal courts do have a certain latitude to create federal common law under ERISA. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 110 (1989) (noting that "we have held that courts are to develop a 'federal common law of rights and obligations under ERISA-regulated plans'") (quoting *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 56 (1987)). This authority, however, is limited to instances in which ERISA is "silent or ambiguous," *Muse v. IBM*, 103 F.3d 490, 495 (6th Cir. 1996), where there is an "awkward gap in the statutory scheme," *Tassinare v. Am. Nat'l Ins. Co.*, 32 F.3d 220, 225 (6th Cir. 1994), or where it may "be said that federal common law is essential to the promotion of fundamental ERISA policies." *Id.*

The present case is not such an instance. First, the problem is not that ERISA is silent on the issue of misleading or inaccurate disclosures; rather, it allows recovery for such disclosures under some circumstances, but not under those presented here. *See, e.g., Drennan v. Gen. Motors Corp.*, 977 F.2d 246, 251 (6th Cir. 1992) ("Misleading communications to plan participants 'regarding plan administration (for example, eligibility under a plan, the extent of benefits under a plan) will support a claim for a breach of fiduciary duty.'") (quoting *Berlin v. Mich. Bell Tel. Co.*, 858 F.2d 1154, 1163 (6th Cir. 1988)); *Krohn v. Huron Mem. Hosp.*, 173 F.3d 542, 547 (6th Cir. 1999) ("[A] fiduciary breaches its duties by

---

[3] Though the parties discuss preemption, strictly speaking preemption is not an issue here because the Union brings its negligence action under ERISA—which provides no such cause of action—and not under state law. Hence the question is not whether ERISA preempts what would otherwise be a valid state law cause of action, but whether the Union has a cause of action under federal law.

materially misleading plan participants, regardless of whether the fiduciary's statements or omissions were made negligently or intentionally."). Second, though ERISA's failure to provide a remedy for the Union might conceivably be described as a "gap in the statutory scheme," the Union has given us no reason to believe that the gap is "awkward," or that creation of the Union's proposed cause of action is "essential to the promotion of fundamental ERISA policies." *Tassinare*, 32 F.3d at 225.

Consequently, we find the Union's claims without merit, and we AFFIRM the judgment of the district court.