**FREIMARK & THURSTON AGENCY, INC., et al., Plaintiffs,**

**v.**

**NATIONAL CITY BANK OF DAYTON, et al., Defendants.**

**No. C–3–99–427.**

United States District Court,
S.D. Ohio,
Western Division.

Sept. 5, 2002.

Don Allen Little, Little, Duncan & Depoorter, Dayton, OH, for Plaintiffs.

Douglas Michael Kennedy, Roetzel & Andress, Columbus, OH, Paul L. Jackson, Roetzel & Andress, Akron, OH, Alan Howard Abes, Dinsmore & Shohl, Cincinnati, OH, for Defendants.

## DECISION AND ENTRY SUSTAINING DEFENDANT BRANSFORD'S MOTION FOR SUMMARY JUDGMENT (DOC. # 28) AND OVERRULING DEFENDANT NATIONAL CITY'S MOTION FOR SUMMARY JUDGMENT (DOC. # 30)

RICE, Chief Judge.

Plaintiffs in this dispute are Freimark & Thurston Agency, Inc., and its principals (collectively "Freimark"). Defendants are the National City Bank of Dayton ("National City") and the Bransford Retirement Plans Services, Inc. ("Bransford").[1] For almost 20 years, Freimark has maintained and sponsored a retirement investment plan ("Plan") for its employees. National City is a former custodian of the Plan funds, and Bransford was, at all relevant times, a third-party administrator of the Plan. The current dispute stems from an apparent delay in the transfer of Plan funds (i.e., Plan assets) from one custodian to another, a delay which Freimark alleges has resulted in a loss of expected investment gains. In its one-count Complaint (Doc. # 1), Freimark alleges that National City and Bransford breached their alleged fiduciary duties to the Plan by allowing the delay to occur. It therefore seeks the reimbursement of those losses on behalf of the Plan, pursuant to the Employee Retirement Income Security Act, 42 U.S.C. §§ 1109 & 1132(e) ("ERISA").[2]

Both National City and Bransford argue that they were never fiduciaries to the Plan, and that even if they are deemed to have been, they breached no duty thereto. Accordingly, at this time, they move for summary judgment. (See Doc. # 28 (Bransford's Motion for Summary Judgment) & Doc. # 30 (National City's Motion for Summary Judgment).) The Court agrees with Bransford and shall SUSTAIN its Motion for Summary Judgment (Doc. # 28), but the Court disagrees with National City, and will therefore OVERRULE its Motion (Doc. # 30).

### I. Factual Background [3]

For some time, National City was the custodian of funds for a 401(k) retirement

---

1. On June 23, 2000, default was entered as to several other nominal Defendants. (See Doc. # 19.)

2. National City argues that Freimark is not allowed to seek "compensatory damages." However meritorious National City's argument may be in some other context, it is enough to note herein that in the case at bar, Freimark, as a Plan fiduciary, seeks the recovery of Plan losses from others claimed to be fiduciaries, and that this is permissible under 29 U.S.C. § 1109.

3. For purposes of ruling on the Defendants' Motions for Summary Judgment, the Court will construe the facts, and all reasonable inferences drawn therefrom, in the light most favorable to the Plaintiffs, who are the non-moving parties. The Court notes that Freimark attached an affidavit to its Memorandum Opposing Summary Judgment (Doc. # 32 (stated as to both Motions)), in which it swore to the veracity of the facts as stated in its Memorandum. The Court will therefore construe, as true, said factual assertions contained therein.

plan which Freimark administered for its employees.[4] (Doc. # 32 at 3.) Employees had their own investment accounts with National City, and they were individually responsible for directing the investment of their contributions therein. (A. Freimark Depo. at 10, 16[5]; K. Freimark Depo. at 11[6].) In 1996, Freimark effected two changes to the Plan: 1) it outsourced partial Plan administration to Bransdon, and 2) subsequently transferred Plan funds from National City to Fidelity Investments ("Fidelity"). (Doc. # 32 at 3–4.)

Bransford agreed to provide the following services to Freimark for an annual fee:

    1) obtaining and reconciling updated employee, investment and related data;

    2) providing the necessary forms for contribution and investment changes, beneficiary designations and related coordination;

    3) monthly processing of 401(k) contributions via a mutually agreeable format;

    4) quarterly composite individual participant statements and related plan summary reports;

    5) semi-annual ADP/ACP tests;

    6) annual compliance review of 401(a)(26) participation test, 410(b) coverage test, 401(a)(4) discrimination test, 415 & 402(g) limits, top heavy test, etc.;

    7) annual IRS Form 5500 series and required schedules;

    8) summary annual (Plan Financial) report for distribution to plan participants.

(Doc. # 28 at Ex. 7.) It also offered, for additional fees, other administrative services. (*Id.*) Finally, Bransford undertook the responsibility of investing Plan contributions at the direction of individual Plan participants. (*Id.*; A. Freimark Depo. at 16–17.) Bransford did not offer investment advice, and it was not intended that it would have any discretion to invest Plan funds on its own, either during the time Plan funds were within the custody of National City, or after their transfer to Fidelity. (A. Freimark Depo. at 11, 16; K. Freimark Depo. at 19, 27.) The Service Agreement set forth the entirety of Bransford's duties. (A. Freimark Depo. at 28–29; K. Freimark Depo. at 26–27.)

National City's role as the custodian of the Plan funds was merely that, to hold the funds, invest them as directed by the Plan participants, and provide account statements on a quarterly basis. (K. Freimark Depo. at 13.) Its duties with respect to the Plan were defined in the Adoption Agreement into which it entered with Freimark. (*Id.* at 71 & Def.'s Ex. A.) It was not designated as a fiduciary therein, nor did it ever expressly accept a fiduciary role with respect to the Plan. (*Id.* at 75–76.) The Plan Administrator was Freimark itself, specifically Ed Henz, Freimark's accountant. (*Id.* at Ex. A, at 2.)

With regard to the transfer of funds from National City to Fidelity, such was scheduled for early September, 1996, and Bransford advised Freimark that it would take up to 48 hours from the time the funds were withdrawn from National City to the time they were reinvested with Fidelity. (Doc. # 32 at 4.) Jan Franklin, a financial advisor, had been retained by Freimark for the purpose of advising Plan participants of the investments available through Fidelity, and to assist them in their investment decision making. (K. Freimark Depo. at 78.) Freimark requested the transfer on August 29, 1996, expecting that the funds would transfer on

---

**4.** *See* 26 U.S.C. § 401(k).

**5.** Anne Freimark is an employee of Freimark. Her deposition was filed with the Court on November 19, 2001.

**6.** Keith Freimark is the President of Freimark, a trustee of the Plan, and a Plaintiff herein. His deposition was filed with the Court on November 19, 2001.

or by September 3. (Doc. # 32 at 5.) As to the latter point, nobody at National City gave Freimark any reason to believe that the funds would actually transfer on or by September 3; Freimark merely believed itself that it was reasonable to expect the transfer to go through in that amount of time. (A. Freimark Depo. at 67; K. Freimark Depo. at 35, 82.) Initially, due to Freimark's own errors, National City was unable to process Freimark's request, and it took three requests before Freimark transmitted (by facsimile) the correct account and routing information to National City, necessary for the transfer to be processed. (K. Freimark Depo. at 84–88 & Def.'s Exs. 4–5.) There is no evidence as to what time of day on August 29 the final request was received by National City, but Freimark did confirm, around 4:00 p.m. on August 30, that the three requests had been received. (A. Freimark Depo. at 63–64.)

Friday, August 30, was the Friday before the 1996 Labor Day weekend, and National City did not reopen for business until Tuesday, September 3. As it happened, the funds did not transfer to Fidelity until September 6, at which time they were transferred in a lump sum. (Doc. # 32 at 6; N. Bransford Decl. (Doc. # 28 at Ex. 25) ¶ 7.)[7] What is more, they were not actually reinvested in the proper individual Fidelity investment accounts until September 18. (*Id.*) In the interim, the funds sat in a general Fidelity money market account. (*Id.* at 6.) The reinvestment delay was the result of Bransford not having sufficient information as to how the Plan funds were to be distributed among the individual Fidelity investment accounts; information which it did not receive from National City until September 18. (*Id.;* N. Bransford Decl. ¶ 8; Doc. # 28 at Ex. 19.)

On one occasion during the interim, Anne Freimark, a Freimark employee, had asked Bransford whether it could apportion and direct the funds into the individual Fidelity accounts based on a June 30 account statement from National City. (A. Freimark Depo. at 25.) Bransford stated that it could not, given that the total value of the Plan had changed since June 30, and that without financial figures for the individual National City accounts as of the time of the transfer, it had no way of knowing how the lump sump should be allocated to the individual Fidelity investment accounts. (*Id.* at 25–26; N. Bransford Decl. ¶ 7.) Furthermore, Bransford did not believe it had any discretion to make such a decision on its own. (N. Bransford Decl. ¶ 5.) Although she disagreed with Bransford's opinion, Anne Freimark did not expressly state as much. (A. Freimark Depo. at 26.)

Freimark seeks damages from National City for the expected gain it calculates the Plan failed to realize over the three-day interim between September 3 and September 6. From Bransford, Freimark seeks damages for the expected gain it calculates the Plan failed to realize as a result of the transferred funds not being reinvested into individual investment accounts until September 18. Both National City and Bransford argue that they were never fiduciaries to the Plan, and that even if they are deemed to have been, they breached no duty thereto.

## II. *Standards Governing Motions for Summary Judgment*

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v.*

---

**7.** At all relevant times, Neal Bransford was Bransford's Vice President of Marketing.

*Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Of course, the moving party:

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Id.* at 323, 106 S.Ct. 2548; *see also Boretti v. Wiscomb,* 930 F.2d 1150, 1156 (6th Cir. 1991)(The moving party has the "burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the nonmoving party, do not raise a genuine issue of material fact for trial.")(quoting *Gutierrez v. Lynch,* 826 F.2d 1534, 1536 (6th Cir.1987)). The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)(quoting Fed.R.Civ.P. 56(e)). Thus, "[o]nce the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." *Talley v. Bravo Pitino Restaurant, Ltd.,* 61 F.3d 1241, 1245 (6th Cir.1995). Read together, *Liberty Lobby* and *Celotex* stand for the proposition that a party may move for summary judgment by demonstrating that the opposing party will not be able to produce sufficient evidence at trial to withstand a directed verdict motion (now known as a motion for judgment as a matter of law, Fed.R.Civ.P. 50). *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1478 (6th Cir.1989).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *see also Michigan Protection and Advocacy Serv., Inc. v. Babin,* 18 F.3d 337, 341 (6th Cir. 1994)("The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff."). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. 2548. Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment shall be denied "[i]f there are ... 'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" *Hancock v. Dodson,* 958 F.2d 1367, 1374 (6th Cir.1992) (citation omitted). Of course, in determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in favor of that party. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. If the parties present conflicting evidence, a court may not decide which evidence to believe, by determining which parties' affiants are more credible; rather, credibility determinations must be left to the fact-finder. 10A Wright, Miller & Kane, Federal Practice and Procedure, § 2726. In ruling on a motion for summary judgment (in other words, in determining whether there is a genuine issue of

material fact), "[a] district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller,* 889 F.2d 108, 111 (6th Cir.1989), cert. denied, 494 U.S. 1091, 110 S.Ct. 1839, 108 L.Ed.2d 967 (1990); *see also L.S. Heath & Son, Inc. v. AT & T Information Sys., Inc.,* 9 F.3d 561 (7th Cir.1993); *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 915 n. 7 (5th Cir.), *cert. denied,* 506 U.S. 832, 113 S.Ct. 98, 121 L.Ed.2d 59 (1992)("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment...."). Thus, a court is entitled to rely, in determining whether a genuine issue of material fact exists on a particular issue, only upon those portions of the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties.

## III. *Analysis*

ERISA is a comprehensive federal law governing employee benefits and benefits plans, including retirement plans. *See Thompson v. American Home Assurance Co.,* 95 F.3d 429, 434 (6th Cir.1996); 29 U.S.C. § 1002(2). The parties do not dispute that Freimark's Plan was subject to ERISA. The questions presented are whether Bransdon and/or National City was a fiduciary to the Plan, and, if so, whether either breached a fiduciary duty arising thereunder. Thus, the Court, after discussing the state of the law on ERISA fiduciaries, must consider first whether either Defendant was a fiduciary.

### A. *Fiduciary Status under ERISA*

29 U.S.C. § 1102(a)(1) requires that every ERISA plan be established pursuant to a written instrument and that said instrument provide for one or more named fiduciaries who jointly or severally shall have authority to control and manage the operation and administration of the plan. Section 1102(a)(2) defines the "named fiduciary" as the entity named in the instrument as such, or a qualified entity named pursuant to a procedure specified in the instrument.

In addition, § 1002(21)(A) states in pertinent part:

[A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

Furthermore, the Department of Labor has published the following, phrased in question and answer format, to help clarify the statutory definition:

Q: Are persons who have no power to make any decisions as to plan policy, interpretations, practices or procedures, but who perform the following administrative functions for an employee benefit plan, within a framework of policies, interpretations, rules, practices and procedures made by other persons, fiduciaries with respect to the plan:

(1) Application of rules determining eligibility for participation or benefits;

(2) Calculation of services and compensation credits for benefits;

(3) Preparation of employee communications material;

(4) Maintenance of participants' service and employment records;

(5) Preparation of reports required by government agencies;

(6) Calculation of benefits;

(7) Orientation of new participants and advising participants of their rights and options under the plan;

(8) Collection of contributions and application of contributions as provided in the plan;

(9) Preparation of reports concerning participants' benefits;

(10) Processing of claims; and

(11) Making recommendations to others for decisions with respect to plan administration?

A: No. Only persons who perform one or more of the functions described in section 3(21)(A) [29 U.S.C. § 1002(21)(A) ] of the Act with respect to an employee benefit plan are fiduciaries. Therefore, a person who performs purely ministerial functions such as the types described above for an employee benefit plan within a framework of policies, interpretations, rules, practices and procedures made by other persons is not a fiduciary because such person does not have discretionary authority or discretionary control respecting management of the plan, does not exercise any authority or control respecting management or disposition of the assets of the plan, and does not render investment advice with respect to any money or other property of the plan and has no authority or responsibility to do so.

29 C.F.R. § 2509.75-8, Question and Answer D-2 (2002). *See also id.* at Answer FR-16 ("A fiduciary with respect to the plan who is not a named fiduciary is a fiduciary only to the extent that he or she performs one or more of the functions described in section 3(21)(A) of the Act [29 U.S.C. § 1002(21)(A) ].").

Herein, there is no question that neither Defendant was a named fiduciary, as described in § 1102(a)(2). The question,

then, is whether either performed any functions of a fiduciary, as contemplated by § 1002(21)(A) and the Department of Labor guidelines set forth above. This question turns on each Defendant's actual involvement in the operation and administration of the Plan. *See John Hancock Mut. Life Ins. Co. v. Harris Trust and Sav. Bank,* 510 U.S. 86, 96, 114 S.Ct. 517, 126 L.Ed.2d 524 (1993) (observing that "Congress commodiously imposed fiduciary standards on persons whose actions affect the amount of benefits retirement plan participants will receive"); *Mertens v. Hewitt Assocs.,* 508 U.S. 248, 262, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993) (stating that ERISA defines "fiduciary" not in terms of formal trusteeship, but in functional terms of control and authority over the plan); *Smith v. Provident Bank,* 170 F.3d 609, 613 (6th Cir.1999) (stating same).

## B. *Whether Bransdon Was a Fiduciary*

▮ The Court finds that Bransdon was not a fiduciary. To begin with, Freimark, as the Plan Administrator, was itself a fiduciary in that capacity. An administrator can certainly delegate administrative authority to another, and thereby make that other a fiduciary as well, but no evidence has been adduced in this case that Freimark did any such thing. Nothing in the Service Agreement between Freimark and Bransdon describes Bransdon as a fiduciary, and it neither appears, nor has been argued, that any of Bransdon's defined duties, as set forth therein, was anything but ministerial in nature. In other words, Freimark delegated to Bransdon, by contract, certain ministerial tasks, but it did not delegate, nor did Bransdon accept, any administrative *authority* (i.e., discretion as to how to administer the Plan).

As to the type of tasks Bransdon contracted to perform as a third-party administrator, the Department of Labor guidelines set forth above, the Sixth Circuit, and ERISA itself (29 U.S.C. § 1002(21)(A)), all instruct that such does not transform Bransdon from a mere Plan contractor into a Plan fiduciary. For example, in *Michigan Affiliated Healthcare Sys., Inc. v. CC Systems Corp. of Michigan*, 139 F.3d 546 (6th Cir.1998), the Sixth Circuit held that a party which, in its capacity as a third-party administrator, "had responsibilities in the areas of accounting, plan benefit development, employee communications, preparation of documents, and insurance," was not an ERISA fiduciary. 139 F.3d at 548–49. Per the terms of the Service Agreement, Bransdon was in no different a position with respect to the Plan at issue herein than the third-party administrator in *Michigan Affiliated* was with respect to the plan at issue in that case.[8]

Indeed, it is telling that Freimark does not even point to the Service Agreement in arguing that Bransdon was a fiduciary, but instead directs the Court's attention to its acts as they related to the transfer of funds from National City to Fidelity. Freimark contends that Bransdon had the authority to transfer the funds from National City to Fidelity, had the authority to direct their deposit into a Fidelity holding fund (i.e., the general money market fund), refused to reinvest the funds as directed by Freimark, and failed to acquire the account information it needed, and was required to obtain, prior to September 18, 1996. (Doc. # 32 at 9–11.) In other words, Freimark wants the Court to find that Bransford functioned as a fiduciary, even though it did not contract to do so under the Service Agreement.

Even when the Court construes the facts in a light most favorable to Freimark, as it must in ruling on a motion for summary judgment, it would be unreasonable to infer that Bransford had any such authority, or took it upon itself to exercise such. *First*, no evidence has been adduced that Bransdon had the authority to transfer funds, and no evidence has been adduced that Bransdon actually did direct the transfer of funds. The decision was made by Freimark. (K. Freimark Depo. at 18–19.) *Second*, no evidence has been adduced that Bransford directed the transferred funds to be deposited in the Fidelity money market account. One of its job duties, as the deposition statements of Anne and Keith Freimark make clear, was to communicate the investment decisions of the plan participants to National City, and later to Fidelity. It was the Plan

---

**8.** To address some confusion evidenced by Freimark's argument, the Court notes here that the terms "plan administrator" and "third-party administrator" are not synonymous. As generally used (for example, as the two terms were used by the Sixth Circuit in *Michigan Affiliated*), the term "administrator" denotes the party principally responsible for the discretionary administrative duties, such as establishing the plan, determining who is eligible to participate, and processing claims. "Third-party administrator," by contrast, refers to a disinterested entity which has contracted with the plan sponsor (e.g., an employer who offers a 401(k) plan to its employees) to perform certain tasks related to plan administration, which may, but need not, include discretionary tasks. Importantly, the duties of a "third-party administrator" are exactly those to which the parties agree by contract. There is nothing which prevents a plan sponsor from outsourcing *all* administrative duties to a third party, such that the third party becomes a fiduciary itself, but where the third party has only contracted to perform ministerial administrative tasks, and not discretionary tasks, it is not a fiduciary. Generally, labels mean little, and federal courts unanimously agree that one's fiduciary status, under ERISA, is governed by its functional, not formal, character.

liaison to Fidelity, but it had no discretion of its own.

The entire basis for Freimark's argument that Bransford directed the deposit of the transferred funds into the general money market account at Fidelity is the fact that it did not agree with Anne Freimark that it could reinvest the funds in individual accounts, using figures taken from the June 30 account statement supplied by National City. In other words, because Bransford did not direct the funds into individual accounts based on the June 30 account statement, Freimark asks the Court to infer that it affirmatively directed the deposit of the funds into the money market account. This is not a reasonable inference. Given the fact that Bransdon had no discretion to make such a decision under the Service Agreement, Freimark must do more to demonstrate that Bransdon undertook such a role on its own. The facts adduced herein show that the funds were transferred at the request of Freimark, and that Bransdon could only reinvest them on the Fidelity end if it had 1) direction from the Plan participants as to how they wanted their funds invested with Fidelity, and 2) direction from National City as to the value of each participant's account *with National City* at the time the National City accounts were closed and the funds transferred. It is not disputed that Bransford did not have current information from National City on September 6, the date of the transfer. Furthermore, there is no evidence that Bransford even played a role in the transfer, either on the National City end or the Fidelity end. (K. Freimark Depo. at 35.) In the absence of any evidence that Bransford exceeded its contractual authority and directed the initial money market investment itself, the Court cannot infer, reasonably, that Bransford did so.[9]

*Third*, there is no evidence that Bransdon refused to invest Plan funds as directed by the Plan or any of its fiduciaries or beneficiaries. Had Anne Freimark been a trustee of the Plan, and had she actually directed Bransdon to allocate the funds in specific Fidelity investment accounts on the basis of the June 30 statement supplied by National City, and had Bransdon thereafter declined to do so, the result herein might be different. On such facts as those, it could be argued that Bransdon took it upon itself to make an investment decision, in that it overrode a directive from the Plan (as issued by a Plan trustee), and by doing so performed in the capacity of a fiduciary. That hypothetical is one thing, but what actually happened is quite another. Anne Freimark was not a trustee. (A. Freimark Depo. at 76.) Nor has it been demonstrated that she was, in any other capacity, a fiduciary to the Plan. Furthermore, she never actually directed Bransdon to reinvest the funds using the June 30 figures; she merely discussed the possibility of Bransdon doing so, and happened to disagree with its conclusion that it did not have the discretion to do it. (*Id.* at 26.) At the end of the day, Freimark's dispute with Bransdon arises from a disagreement over the scope of the latter's *contractual* duties. Because contractual obligations, without more, do not give rise to fiduciary obligations, Freimark's claim as to Bransdon is without merit.

**9.** It is, of course, *possible* to infer that Bransford directed Fidelity to place the transferred lump sum in a money market account, but then again, a number of other possible scenarios could also be inferred. To create a genuine issue of material fact, an inference must be more than merely possible, it must be *reasonable, see Anderson*, 477 U.S. at 255, 106 S.Ct. 2505, and to be reasonable, it must have some basis in fact, not mere speculation. *See Matsushita*, 475 U.S. at 586, 106 S.Ct. 1348. Given the facts presented herein, the Court does not believe that such an inference is reasonable.

*Fourth,* and finally, there is no evidence that it was Bransdon's fault that it did not have sufficient information from National City on which to direct Fidelity how to reinvest the funds into individual accounts. Freimark makes much of the fact that the transfer of funds had long been in the planning stages, as if to suggest that Bransford had no excuse for not having the correct information on the date the transfer actually took place. This argument is irrelevant, and is, in any event, wrong. Freimark acknowledges that National City did not transmit the correct information to Bransdon until September 18. (A. Freimark Depo. at 25–27.) More fundamentally, even if it was Bransdon's absolute duty to acquire the information on time, such that its failure to do so might be construed as a breach of contract, that by itself does not transform the contractual duty into a fiduciary one. The duty to procure account and routing information would have been ministerial in nature, and in no manner would have vested in Bransdon the discretion to manage or administer the Plan.

For the reasons stated, Freimark's claim against Bransdon is without merit. There being no genuine issue of material fact as to the fiduciary status of Bransdon, its Motion for Summary Judgment (Doc. # 28) is SUSTAINED.

### C. *Whether National City Was a Fiduciary*

■ The result is different as to National City, and the Court finds that a genuine issue of material fact exists as to whether, under the controlling law of the Sixth Circuit, it was a fiduciary. To be sure, nothing in the facts supports a finding that National City had any discretion as to the management of Plan assets. Neverthe-

less, the Sixth Circuit has answered in the affirmative the question of whether a bank, serving as the mere custodian of ERISA plan funds, can be characterized as a fiduciary.[10]

In *Provident Bank, supra,* it was demonstrated that the defendant, Provident Bank, had at one time been not only the custodian of, but also the trustee of, certain ERISA benefits plans. 170 F.3d at 612. In April of 1991, Provident Bank was replaced as the trustee by another bank, Society Bank; however, Provident Bank remained the custodian of the plans' funds for more than a month thereafter. *Id.* On June 7, 1991, the plaintiff directed Provident Bank to transfer the funds remaining in his account with it to his new plan account at Society Bank. *Id.* Provident Bank did so, but in so doing it failed to transfer several thousand dollars belonging to the plaintiff. *Id.* After "a long and frustrating campaign to have this error acknowledged and corrected," the plaintiff filed suit against Provident Bank in federal court. *Id.* At some subsequent point, the plaintiff also filed a suit in state court. *Id.* The state court suit was removed and consolidated with the federal suit, and it was the latter action which gave rise to the appeal to the Sixth Circuit. *Id.*

At issue in the Sixth Circuit was whether the district court had held properly that the plaintiff's claim for common law breach of fiduciary duty, set forth in his state court suit, was completely preempted by ERISA, such that it could be removed to federal court. That is to say, the question was whether the common law breach of fiduciary claim could have been stated as a breach of fiduciary claim under ERISA, 29 U.S.C. § 1132(a)(2). *Id.* at 613; *see Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987).

---

**10.** Somewhat surprisingly, this issue has not received much treatment in the federal courts.

That question required the Sixth Circuit to address whether Provident Bank, at the time it transferred the funds to Society Bank, was a fiduciary to the plans' funds, such that it could be subject to an ERISA action for breach of its fiduciary duties. The plaintiff argued that it was not, because, at the relevant time, Provident Bank was no longer a trustee of the funds, and served merely as the custodian of the funds, without any discretionary authority over same.

■ In addressing the definition of "fiduciary" under 29 U.S.C. § 1002(21)(A), specifically where the statute states that a fiduciary is one which "exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets," the Sixth Circuit honed in on the language "any authority or control," and held that Provident Bank remained a fiduciary because it controlled plan assets. 170 F.3d at 613. Thus, under *Provident Bank*, it is the law in the Sixth Circuit that a custodian of ERISA plan funds, although not vested with the discretion or authority to manage, invest or dispose of said funds, is nevertheless a fiduciary on account of it having "control" over said funds.

Admittedly, there are several potential shortcomings to this Court's reliance on the holding in *Provident Bank. First,* the argument against a finding of fiduciary status was submitted in that case by a plaintiff who was seeking to overturn a finding that his state law claim could be removed to federal court. In other words, the posture of the party submitting the argument was not that of a bank or some other funds' custodian, and it is plausible to think that the argument was not fully briefed to the appellate court from the perspective of a party in a position similar to that of National City herein. *Second,* other circuit courts which have considered the argument from the perspective of the funds custodian have ruled that a mere custodian of ERISA plan funds is not a fiduciary thereto. *See Beddall v. State Street Bank & Trust Co.,* 137 F.3d 12, 20 (1st Cir.1998) (holding that a bank which does no more than hold plan funds and generate reports is not a fiduciary); *Arizona State Carpenters Pension Trust Fund v. Citibank,* 125 F.3d 715, 721–22 (9th Cir.1997) (same); *Useden v. Acker,* 947 F.2d 1563, 1574–75 (11th Cir.1991); *O'Toole v. Arlington Trust Co.,* 681 F.2d 94, 96 (1st Cir.1982).[11]

Although the reasoning of National City is sound, and the meaning given the word "control" by the *Provident Bank* court quite broad,[12] it is not for a district court

---

11. Presumably, claims against banks which are deemed non-fiduciary custodians of funds could, depending on their specific nature, rest on common law theories of bailment or conversion.

12. The Court observes that the *Provident Bank's* treatment of the term "control" was broad because as used in ERISA, "control" is modified by the phrase "respecting management or disposition of [plan] assets," and the Sixth Circuit did not address how the bank's mere custodianship, which gave it physical *possession* of the plan funds, vested it with control over the "management or disposition" of said funds. *Accord Kaniewski v. Equitable*

*Life Assurance Soc'y,* 1993 WL 88200, at *3 (6th Cir. March 26, 1993) (stating: " 'Discretionary authority,' 'discretionary control,' and 'discretionary responsibility' mean actual decision-making power"). It is reasonable to argue, as National City seems to do herein, that per the terms of the controlling ERISA document, a party either is or is not a fiduciary on account of the functions it is obligated to perform. If negligent, or even tortious, acts, affecting matters outside the scope of its contractual obligations, can convert a non-fiduciary's status into that of a fiduciary, then a party to an ERISA agreement could never be certain of its fiduciary status.

to sidestep a recent holding of its appellate court, which is directly on point, merely because the postures of the parties presenting the identical argument in the two cases are different. Construing the facts in a light most favorable to Freimark, it appears that in August and September of 1996, National City was in the identical position as that of Provident Bank in the *Provident Bank* case. On the basis of that decision, the Court finds that a genuine issue of material fact exists as to whether National City was a fiduciary to the Plan at issue herein. As such, the Court will proceed to address whether there is a genuine issue of material fact as to whether National City breached a fiduciary duty.

### D. *Whether National City Breached a Fiduciary Duty*

Where a fiduciary relationship exists, the fiduciary is charged with discharging its duties "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B). Freimark contends that National City, in transferring Plan funds on September 6 instead of September 3, caused the Plan to lose in excess of $7000 (based on Freimark's estimation of the gain the Plan would have realized had it been invested properly during the interim). Construing the facts in a light most favorable to Freimark, the evidence shows that National City received the three requests to transfer funds, the third of which contained the accurate account information, before the close of business on August 29, 1996. (Doc. # 32 at 6.) August 30 was a business day, as was September 3, 4, and 5. Thus, four business days passed before National City actually carried out the request on September 6.

National City argues that Freimark had no basis to expect the transfer to be processed any earlier than it was, that it never actually requested that the transfer be processed more promptly, and that it has failed to demonstrate how National City's response was not reasonable of itself. (Doc. # 30 at 8.) For support, it cites *Hunter v. Caliber System, Inc.*, 220 F.3d 702 (6th Cir.2000). In *Hunter*, one of the issues was whether the plaintiffs' employer, as the sponsor of several 401(k) plans in which the plaintiffs participated, breached its fiduciary duty by failing to provide adequate staff for effecting a timely transfer of assets from several existing 401(k) plans to a new 401(k) plan. 220 F.3d at 718. Although the Sixth Circuit first held that the employer was not acting in its fiduciary capacity when it made its decision as to how many persons it would devote to the transfer of assets, the appellate court stated in dictum that because the plaintiffs had not raised a genuine issue of material fact on the question of timeliness, they would have been unable to prove the employer had breached a fiduciary duty even if such existed. *Id.* at 719. In so holding, it affirmed the district court's grant of summary judgment to the employer.

Several factors limit the persuasive value of *Hunter*. To begin with, its dictum on the timeliness issue did not control the outcome. Furthermore, it was noted in that case that the written agreement governing the transfer of assets provided for the transfer to take place "as soon as practicable" after the occurrence of the event which triggered the transfer, and that the plaintiffs had failed to offer evidence that it would have been practicable to transfer the assets sooner. *Id.* Finally, as a general observation, because questions of reasonableness are case-sensitive, a result befalling seemingly similarly situated parties in one case is of limited value

in a later case composed of a different set of facts.

The question to be answered is whether National City acted reasonably under the circumstances. In requesting that National City transfer Plan funds to Fidelity, Freimark stated in its first facsimile transmission: "All funds should be liquidated immediately and forwarded as follows...." (K. Freimark Depo. at Def.'s Ex. 4.) Furthermore, Keith Freimark stated that he understood that the follow-up requests, containing corrected account information, were submitted because National City had been unsuccessful in its attempts to transfer the funds based on the first two requests. (*Id.* at 84–87.) National City itself incorporates Keith Freimark's deposition testimony in this regard into its own recounting of the underlying facts. (Doc. 30 at 4.) Thus, while it is true that Freimark has not shown that National City guaranteed an earlier transfer of funds, or that it even requested such, the very fact that National City attempted to transfer the funds on August 29, 1996, after receiving the first and second requests, demonstrates that an earlier transfer was both possible and reasonable. It remains unexplained why National City, after first attempting to transfer the funds on August 29, 1996, waited until September 6 before attempting to do so again.

In light of these facts, the Court agrees with Freimark that a genuine issue of material fact exists as to whether National City acted "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." Further fact finding must be conducted before this question can be answered. Accordingly, National City's Motion for Summary Judgment (Doc. # 30) is OVERRULED.

IV. *Conclusion*

For the reasons stated above, Bransdon's Motion for Summary Judgment (Doc. # 28) is SUSTAINED, and National City's Motion for Summary Judgment (Doc. # 30) is OVERRULED.